# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERICO ROSAS, | Case No. 1:14-cv-01219 DLB |
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| v. | |
| K. HOLLAND, et al., | THIRTY-DAY DEADLINE |
| Defendants. | |

Plaintiff Federico Rosas ("Plaintiff") is a California state prison inmate proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on August 4, 2014. He names California Correctional Institution ("CCI") Warden Holland, Captain Matzen, Counselor Bega, Appeals Coordinators Alomari and Jackson, Officers Lopez, Staton, Wodman and Yubeta, Psychologist Baird, Law Librarian Munoz and Chief of Appeals Zamora as Defendants.[1]

**A.   SCREENING STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on August 13, 2014.

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.    FACTUAL ALLEGATIONS**

Plaintiff is currently incarcerated in the Security Housing Unit ("SHU") at CCI in Tehachapi, California, where the events at issue occurred.

Plaintiff alleges that he sent a letter to the Office of Appeals on December 8, 2013. Defendant Zamora responded on December 17, 2013, and told Plaintiff that Office of Appeals staff could not respond to the issue.  Plaintiff contends that Defendant Zamora therefore knew of

Plaintiff's "mistreatment" but failed to stop it. It appears that Plaintiff was complaining of mistreatment at Kern Valley State Prison ("KVSP"), and believed that Defendant Zamora should have alerted officials at CCI so that the pattern of "abuse" and retaliation would not continue. Plaintiff contends that Defendant Zamora violated the Eighth Amendment and his due process rights.

On December 10, 2013, Defendant Bega provided Plaintiff with his lock-up order. Plaintiff told him that KVSP had made many errors in transferring Plaintiff to the SHU, and explained his reasoning. Plaintiff specifically questioned why the lock-up order indicated that Plaintiff was a threat to himself. Defendant Bega told him that he was a threat to himself because he was caught with a weapon. Plaintiff disagreed, and told him if anything, he is a threat to others. Defendant Bega asked Plaintiff if he "wanted to make it personal" and made a quick hand movement towards his baton. Plaintiff became scared and asked more questions. Defendant Bega told him that he'd take care of it tomorrow. Plaintiff filed a 602 against Defendant Bega. Plaintiff contends that Defendant Bega acted with deliberate indifference when he "failed to find a solution to my mental concern" and instead made it a personal issue. He contends that this contributed to a pattern of psychological torture. Plaintiff also alleges that Defendant Bega failed to protect him by failing to monitor "a prisoner known to be violent." ECF No. 1, at 5.

On December 11, 2013, Plaintiff appeared before a classification committee that included Defendants Bega, Holland, Matzen and Baird. Defendant Bega read a new 128-G and Defendant Matzen asked Plaintiff if he had any questions. Plaintiff asked how they would interpret Defendant Bega's comments the day before about making it "personal." Defendant Matzen tried to justify the comment and indicated that he wouldn't have taken it as a threat, and he wouldn't be upset if an inmate said that to him. Plaintiff told Defendants that his 128-G was wrong and that his SHU assessment "had irrelevant information to [his] SHU term." ECF No. 1, at 6. Defendant Holland searched on the computer and said it looked perfect.

Plaintiff contends that Defendants Bega, Holland, Matzen and Baird violated the Eighth Amendment when they failed to monitor a prisoner known to be violent. He also alleges that Defendants Matzen and Holland violated his First Amendment rights by "pil[ing] conjecture upon

3

1   conjecture to justify their policies. . ." ECF No. 1, at 6.

2         From December 2013 through July 2014, Plaintiff contends that he submitted an appeal
3   about "ongoing violations," including a request to investigate KVSP employees.  Although not
4   entirely clear, Plaintiff alleges that Defendant Alomari opened his mail, even though the appeal
5   was not was not directed to him, or CCI.  Defendant Alomari rejected his appeal for unjust
6   reasons, instructing Plaintiff to submit his appeal to KVSP when he had already done so.  Plaintiff
7   contends that this violated his First Amendment right to access the courts by failing to comply
8   with policies to permit Plaintiff to exhaust his remedies.  He also alleges that Defendant Alomari
9   violated the Eighth Amendment by contributing to "ongoing psychological punishment," his
10  Fourteenth Amendment due process rights, and the First Amendment by "pil[ing] conjecture upon
11  conjecture to justify their policies." ECF No. 1, at 6.

12        Plaintiff alleges that he submitted appeals to "inform of the ongoing violations."
13  Defendant Jackson failed to investigate the allegations of staff misconduct, and shared
14  responsibility for the ongoing psychological suffering.  Plaintiff alleges that this violated the
15  Eighth Amendment by trying to make him go crazy and causing confusion.

16        Plaintiff also alleges that Defendant Jackson violated his right to access the courts when he
17  lost Plaintiff's appeal related to living conditions.  Defendant Jackson "accused" Plaintiff of taping
18  the documents together and rejected them for that reason.  Plaintiff also alleges that he violated the
19  First Amendment for "pil[ing] conjecture upon conjecture to justify their policies." ECF No. 1, at
20  7.

21        On or about December 21, 2013, Plaintiff contends that Defendant Staton did not want to
22  pick up his legal mail because Plaintiff asked him to sign a CDC-22 form.  Plaintiff submitted an
23  appeal, and Defendant Staton returned it on December 22, 2013, telling Plaintiff to use a different
24  form.  Plaintiff asked Defendant Staton for the form and he told Plaintiff, in an aggressive way,
25  that second watch passes out supplies.  Plaintiff suggests that this could have escalated easily, and
26  was a form of psychological torture.

27        On December 25, 2013, Defendant Staton asked other inmates to tell Plaintiff to stop filing
28  appeals.  Plaintiff contends that Defendant Staton was trying to inflict physical harm by trying to

get the inmates to "assume control" over Plaintiff.  ECF No. 1, at 7.

On December 27, 2013, Defendants Yubeta and Wodman brought Plaintiff and his cellmate to the showers.  Defendant Yubeta gave Plaintiff his razor, but Plaintiff told him that it was broken.  Defendant Yubeta denied Plaintiff a useful razor and got aggressive with Plaintiff, telling him to use the one he had or he'd be done.  Plaintiff kept telling him that the blade was broken, and Defendant Yubeta told Plaintiff he was done.  Plaintiff contends that Defendant Yubeta subjected him to a serious risk of harm because inmates or staff could have been injured with the broken blade.  He believes that Defendant Yubeta was acting solely to "join in on the pattern of retaliation, to cause more mental stress, anger, hopelessness and mental pain."  ECF No. 1, at 7.

On the same day, Plaintiff told Defendant Wodman about the situation with Defendant Yubeta while Wodman was putting Plaintiff back into his cell.  Plaintiff alleges that Defendant Wodman acted with deliberate indifference by making it seem like it was Plaintiff's fault.  Defendant Wodman asked Plaintiff why his razor was always breaking.  Plaintiff asked for two appeal forms to complain, but he did not receive any.  Plaintiff asked again, and Defendant Wodman told him that he was the only one "crying."  Plaintiff contends that Defendant Wodman violated his right to access the courts by refusing to pass out appeal forms, and acted solely to inflict psychological harm on Plaintiff in violation of the Eighth Amendment.

On January 8, 2014, Defendant Lopez gave Plaintiff a lecture and attempted to discourage him from using the appeal process and preventing access to the courts.  He told Plaintiff to "stop crying about petty stuff," and told Plaintiff to take his advice or he'd "go CDC on him" and search his cell.  When Plaintiff refused his advice, Defendant Lopez got angry and called the tower officer to open his cell, "as if to go physical on [him]."  Plaintiff contends that this violated the Eighth Amendment, his First Amendment right to access the courts and his First Amendment right to freedom of speech.  ECF No. 1, at 8.

On January 17, 2014, Defendant Lopez and another officer moved Plaintiff and his cellmate out of their cell, stating that the sergeant ordered the move.  However, the inmate that was moved into Plaintiff's old cell said that Defendant Lopez told him that he needed the cell for

5

"two assholes." ECF No. 1, at 8. Plaintiff contends that this violated the Eighth Amendment by causing psychological harm. He believes that Defendants are angry with him because he continues to file grievances.

On June 11, 2014, Defendant Bega came to Plaintiff's door and told him that he was not going to committee that day. Defendant Bega told Plaintiff that he hadn't had a chance to review his C-file yet, but Plaintiff questioned why he had told Plaintiff that he was being released to the main yard. Plaintiff told Defendant Bega that he thought that he was only "playing" with him and giving him a hard time. ECF No. 1, at 9. Defendant Bega got angry, threw a punch to the window-door and told Plaintiff that he (Bega) can do whatever he wants. Plaintiff submitted an appeal about the incident, but it is still pending. Plaintiff contends that he did not provoke Defendant Bega and that Defendant Bega's actions were fueled by his personal feelings of hatred. Plaintiff alleges that Defendant Bega threw a punch directly at his face, but hit the door, in violation of the Eighth Amendment.

On July 2, 2014, Plaintiff went to committee to be released from the SHU. However, Defendant Holland decided to give Plaintiff an indeterminate SHU term for threatening inmates. This was based on statements Plaintiff made to Defendant Dr. Baird and Sgt. Silva about "paying attention to in-cell violence [he] has." ECF No. 1, at 9. Plaintiff contends that he has fought almost all of his cellmates. He explained this to Defendant Baird during a private conversation, but Defendant Baird brought the concern to the Warden. Plaintiff spoke about this only to prevent a casualty from happening, but Defendants punished him for it. Plaintiff contends that his due process rights were violated during the prison disciplinary hearing. He explains that for a month, he believed that he was being released, and he was never told that he was getting an indeterminate SHU term or notified of the threats to harm inmates. Defendant Holland did not let Plaintiff read the specific information, and only told Plaintiff that he had threatened to harm inmates. When Plaintiff tried to explain that his statement was not a threat, Defendant Holland told him that she was not there to debate it and that Plaintiff was getting an indeterminate SHU term and a Rules Violation Report. Plaintiff contends that he was disciplined without due process, and that the decision was fueled by Defendant Holland's personal feelings of hatred and retaliation.

6

Plaintiff also alleges that he constantly told Defendant Holland that officers where threatening him, that his lunches were being thrown, and that his property was denied for over five months. Defendant Holland failed to remedy the issues and violated California Penal Code section 2079.

Finally, Plaintiff contends that Defendant Munoz denied him access to the law library and law books.

C.  **DISCUSSION**

    1.  Eighth Amendment- Conditions of Confinement

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff's allegations are tied together by his belief that he has been subject to ongoing psychological abuse and retaliation. None of his allegations, however, suggest that any Defendant was deliberately indifferent to a substantial risk of harm.

Plaintiff alleges that Defendant Bega scared him when he asked if Plaintiff wanted "to make it personal" after Plaintiff continued to voice his disagreement with information in a lock-up order. Threats, however, do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

He also contends that Defendant Bega failed to find a solution for his "mental concerns," but Plaintiff's allegations are too vague. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim

7

for relief, Plaintiff must set forth factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

Plaintiff also alleges that numerous Defendants Bega, Alomari, Staton, Yubeta, Wodman and Lopez contributed to a pattern of psychological torture. The factual events surrounding his claims, however, are fairly benign. For example, Plaintiff contends that Defendants Alomari and Jackson rejected his appeals, Defendants Staton and Wodman failed to provide appeal forms, Defendant Yubeta would not replace his razor, and Defendants Staton and Yubeta spoke to Plaintiff in a manner in which he did not like. While Plaintiff believes that Defendants have an underlying motivation and are acting to cause psychological harm, his allegations do not rise to such a level. Again, Plaintiff must set forth plausible factual allegations to state a claim for relief.

Plaintiff will be permitted to amend this claim.

### 2. Eighth Amendment- Failure to Protect

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

Plaintiff includes vague allegations that Defendants Zamora, Bega, Holland, Matzen and Baird failed to prevent mistreatment and/or failed to "monitor" an inmate known to be violent. Plaintiff does not further elaborate upon his claims. In fact, the only inmate to which Plaintiff assigns violence is himself (i.e., Plaintiff states that he is not a threat to himself, and that if

anything, he is a threat to others).  There is no indication that Plaintiff faced a substantial risk of serious harm from another inmate or staff member.

Plaintiff will be permitted to amend this claim.

3.      Eighth Amendment- Excessive Force

For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

Plaintiff includes various factual events which he believes rise to the level of a constitutional violation.  For example, he alleges that Defendant Staton tried to inflict physical harm by trying to get inmates to "assume control" over him.  He also contends that Defendant Wodman threatened to "go physical" on him.  Again, however, verbal threats and/or harassment alone are not sufficient to state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Plaintiff also alleges that Defendant Bega threw a punch that hit his window/door, though Plaintiff contends that it was directed at his face.  He alleges that Defendant Yubeta left him with a broken razor that could have injured inmates or staff.  Neither of these incidents resulted in the actual use of force, however.

Plaintiff will be permitted to amend this claim.

        4.        First Amendment- Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff believes that the majority of Defendants are harming him in retaliation for his appeals and/or civil litigation. However, he does not provide any facts other than his generalized belief. The mere possibility of misconduct falls short of meeting the pleading standard. Iqbal, 129 S.Ct. at 1949-50; Moss, 572 F.3d at 969.

Plaintiff also contends that Defendants Holland, Matzen, Alomari and Jackson violated the First Amendment by "pil[ing] conjecture upon conjecture to justify their policies." The exact nature of the violation, however, is unclear, and there is no First Amendment right to be free from decisions with which Plaintiff disagrees.

Plaintiff will be permitted to amend his retaliation claim.

        5.        First Amendment- Access to Courts

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). However, to state a viable claim for relief, Plaintiff must show that he suffered an actual injury, which requires "actual prejudice to contemplated or existing litigation." Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis, 518 U.S. at 348) (internal quotation marks omitted), cert. denied, 132 S.Ct. 1823 (2012); Christopher v. Harbury, 536 U.S. 403, 415 (2002); Lewis, 518 U.S. at 351; Phillips, 588 F.3d at

10

1  655.

2  Plaintiff alleges that Defendants Alomari, Jackson, Wodman, Lopez and Munoz denied
3  access to the courts by either preventing access to the law library or failing to handle his appeals in
4  a manner he deemed appropriate. His allegations are again too vague to state a claim. While
5  Plaintiff often cites a denial of access, he fails to show any actual prejudice. The absence of an
6  injury precludes an access claim, and Plaintiff's complaint is devoid of any facts suggesting any
7  injury occurred. Harbury, 536 U.S. at 415-16; Jones, 393 F.3d at 936.

8  Moreover, inmates do not have the right to a law library or legal assistance. Lewis, 518
9  U.S. at 351. Law libraries and legal assistance programs are only the means of ensuring access to
10 the courts. Id. Because inmates do not have "an abstract, freestanding right to a law library or
11 legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's
12 law library or legal assistance program is subpar in some theoretical sense." Id.

13 Plaintiff will be permitted to amend this claim.

14 6. First Amendment- Freedom of Speech

15 The First Amendment prohibits government officials from "abridging the freedom of
16 speech ... or the right of the people peaceably to assemble." Prisoners retain those First
17 Amendment rights not inconsistent with their status as prisoners or with legitimate penological
18 objectives of the corrections system. See Pell v. Procunier, 417 U.S. 817, 822 (1974). Although a
19 prisoner does not lose all First Amendment protections when he enters prison, id., the "inmate's
20 'status as a prisoner' and the operational realities of a prison dictate restrictions on the
21 associational rights among inmates." Jones v. North Carolina Prisoners' Labor Union, Inc., 433
22 U.S. 119, 125–26 (1977). Prison regulations that infringe on a prisoner's First Amendment rights
23 are valid so long as they are "reasonably related to legitimate penological interests." Turner v.
24 Safley, 482 U.S. 78, 89 (1987).

25 Here, Plaintiff alleges that Defendant Lopez violated his right to freedom of speech,
26 presumably because he attempted to discourage Plaintiff from continuing to file appeals. Despite

27
28

11

the threat, and assuming that freedom of speech involves a right to appeals, Plaintiff does not indicate that any abridgment of that right actually occurred. He therefore fails to state a claim.

Plaintiff will be permitted to amend this claim.

7. Due Process-Inmate Appeals

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

Therefore, to the extent that Plaintiff attempts to state a due process claim against Defendants Zamora and Alomari based on their responses to Plaintiff's appeal, he cannot do so. This claim cannot be cured by amendment.

8. Due Process- Disciplinary Hearing

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

1     In addition, "some evidence" must support the decision of the hearing officer,
2  Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768 (1985), and the evidence must have
3  some indicia of reliability, Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).  The "some
4  evidence" standard is not particularly stringent and the relevant inquiry is whether "there is *any*
5  evidence in the record that could support the conclusion reached. . . ."  Hill, 472 U.S. at 455-56
6  (emphasis added).

7     Plaintiff alleges that Defendants Holland and Baird violated his due process rights when
8  they imposed an indeterminate SHU term.  Specifically, he complains that he was punished for
9  statements made to Defendant Baird about inmate violence.  Under the "some evidence" standard
10 above, Plaintiff's statements to Defendant Baird would likely be sufficient.

11    Plaintiff also alleges that Defendant Holland did not tell him that he was getting an
12 indeterminate SHU term, or notify him of the threats.  He also alleges that she did not allow him to
13 read the "specific information," and rejected his explanation about the statement.  Plaintiff's
14 allegations are too vague, however, to determine if he states a claim.  While the failure to notify an
15 inmate of the charges against him, or refusing to permit an inmate to speak at the hearing may
16 state a claim,   he does not provide specific information to permit the Court to fully analyze his
17 claim.

18    Plaintiff will be permitted to amend this claim.

19    9.    California Penal Code

20    Finally, Plaintiff contends that Defendant Holland violated California Penal Code section
21 2079 when she ignored his complaints about various matters.  Sections of the California Penal
22 Code, however, generally do not provide for a private right of action.  In any event, this section
23 was repealed in 2005.

24    This deficiency cannot be cured by amendment.

25 **D.    CONCLUSION AND ORDER**

26    Plaintiff's complaint fails to state any claims for which relief may be granted.

27    **Plaintiff will be permitted to amend the claims identified above.  Plaintiff should only**
28 **amend, however, if he can do so in good faith.  Plaintiff cannot successfully amend by**

**contradicting statements in prior pleadings.**

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named Defendant did that led to the deprivation of Plaintiff's federal rights and liability may not be imposed on supervisory personnel under the theory of mere *respondeat superior*, Iqbal, 556 U.S. at 676-77; Starr v. Baca, 652 F.3d 1202, 1205-07 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed, with leave to amend;

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   **January 30, 2015**                    /s/ *Dennis L. Beck*
                                           UNITED STATES MAGISTRATE JUDGE

14